Adjudged accordingly.

---

LEAVITT T. ROBBINS *v.* JOHN CODMAN and HENRY HOLDREGE, JUNIOR.

Where a charter party, by which bills of lading are to be taken by the owners in payment of the charter money, allows to a charterer a certain number of "lay days," wherein to load and discharge the vessel, and neither the consignees nor other persons receive the cargo or pay the freight after arrival at the port of destination; the master (being in a distant port, and acting as sole agent, and on behalf of both charterer and owners of the vessel,) is bound to sell the cargo to pay the freight, on the expiration of the lay days, or within a reasonable time thereafter.

He is not bound to sell before the lay days have expired. The charterers are entitled to the chance, that within that period consignees or owners of the cargo will appear and pay the freight.

Although, as between the master and the owner of the cargo, the former is not bound to delay the sale after the period provided in the bills of lading; yet, as between the owner of the vessel and the charterer, a sale before the expiration of the lay days reserved in the charter party, would be at the peril of the owner of the vessel, in case such sale should fail to produce full freight.

Robbins *v.* Codman.

Although, when the vessel was fitted out, her owner received bills of lading of her cargo in payment for freight or charter money; such receipt, being conditioned that the same should not prejudice the charter party, will not affect the right or duty of the master in respect to the sale, and the time when the same should be effected.

After such sale, the master has a reasonable time to unload the ship and deliver the cargo to the purchaser.

Such reasonable time to unload must be allowed, although the master himself, or the owner of the vessel through him, bids in the cargo, and becomes the purchaser.

The charterer is chargeable with demurrage from the termination of the period reserved by the charter party, until the expiration of a reasonable time for the discharge and delivery of the cargo to the purchaser.

The master is bound to commence the discharge of the cargo immediately after the sale, although he may have made such sale before the lay days have expired.

The charterer will not be liable for demurrage after a reasonable period allowed for the discharge.

And where the master, having put up the cargo at auction, upon due notice, became the purchaser at the sale, at the highest price bid therefor, but retained the goods in the ship, awaiting higher prices, and afterwards resold the same; *held,* that he had no right thus to constitute the ship a storehouse at the expense of the charterer, and that the latter was not liable for demurrage beyond a reasonable time for discharging after the first sale, although the effect of the delay might be to realize more upon the goods, and thus obtain the full freight to the advantage of both the charterer and ship owner.

Where a complaint for demurrage alleges that the ship was laden by the charterer with a cargo of lumber and coal, and the answer admits that the defendant loaded the vessel " with the cargo mentioned in the complaint;" the defendant is not at liberty to insist, at the trial, that the coal was not shipped by him on freight under the charter party, but was the owner's property shipped for ballast.

Where no cross appeal is taken by a respondent, an error to his prejudice is not a ground of reversal upon the appeal prosecuted by the appellant.

THIS action was founded upon a charter party, and was instituted by the owner of a vessel, against the charterers, to recover a claim for demurrage. The charter party was in these words:

" This charter party, made and concluded upon in the city of New York, the twentieth day of January, in the year of our Lord one thousand eight hundred and fifty, between the

Robbins *v.* Codman.

owner of the bark 'John Fehrman,' of Plymouth, Mass., of the burthen of three hundred and sixty-eight tons, or thereabouts, register measurement, now lying in the harbor of New York, of the first part, and John Codman and H. Holdrege, of the second part, witnesseth, that the said party of the first part agrees on the freighting and chartering of the whole of the said vessel—with the exception of the deck, cabin and necessary room for the crew, and stowage of provisions, sails and cables—or sufficient room for the cargo hereinafter mentioned, unto said party of the second part, for a voyage from New York to San Francisco, California, on the terms following:

"The said vessel shall be tight, staunch, strong, and every way fitted for such voyage, and receive on board, during the aforesaid voyage, the merchandise hereinafter mentioned; and no goods or merchandise shall be laden on board, otherwise than from the said party of the second part, or their agent. The said party of the second part doth engage to provide and furnish to the said vessel a full cargo of merchandise, with the exception of dead weight for ballast; the owner of the ship being entitled to the shipment of one hundred sets of sashes and ten thousand shingles, and to pay to said party of the first part, or agent, for the use of said vessel during the voyage aforesaid, at the rate of sixty cents per cubic foot, without primage. Bills of lading to be received from the charterers as payment in full, according to their tenor. But provided they do not reach the amount of charter money, then any deficiency to be paid by them before the clearing of the vessel; and any excess to be drawn for by the owner or his agent, before clearing, and the draft to be accepted by the captain, payable in San Francisco when the freight is collected. It is agreed that the lay days for loading and discharging shall be as follows, commencing from the time the captain reports himself ready to receive or discharge cargo, one hundred running lay days; what are not used in one port, to be allowed in the other. And that for each and every day's detention, by default of said party of

second part, or agents, seventy-five silver dollars per day, day by day, shall be paid by said party of second part, or agent, to said party of first part, or agent—the cargo or cargoes to be received and delivered according to the custom and usages at the ports of loading and discharging. Bills of lading to be signed as requested by the parties of the second part, without prejudice to this charter party—it being stated upon said bills of lading that cargo is to be received from vessel's tackles when ready for delivery; freight payable in specie or its equivalent, before the delivery of the goods, if required.

"To the true and faithful performance of all and every of the foregoing agreement, we, the said parties, do hereby bind ourselves, our heirs, executors, administrators and assigns, each to the other, in the penal sum of eighteen thousand dollars. In witness whereof, we hereunto set our hands, the day and year first above written. (Signed and sealed by John Codman, H. Holdrege, Jr., L. T. Robbins. Signed in the presence of Charles A. Tumun, G. Wheelwright. Thirty-four of the one hundred lay days have been used in New York. John Codman, for himself and H. Holdrege. New York, March 26th, 1850.")

The cause was tried by the court, before WOODRUFF, J., without a jury, and a judgment recovered by the plaintiff for $2,986 69. The following are copies of the finding of facts and the conclusions of law, with the opinion and decision, filed at special term:

"Upon the pleadings in this case, and the evidence before me, I find:

"That the charter party, of which a copy is set forth in the case, was executed between the plaintiff and the defendants; that the bark, so chartered, was laden by the defendants with a cargo chiefly of lumber, for which the bills of lading shown in the case were signed—the freight and primage thereon amounting to over $17,000; and having used thirty-four of the lay days allowed by the charter in New York, said vessel

sailed for San Francisco in March, 1850, and arrived there December 1st.

"That the plaintiff was ready to deliver the cargo there, but no person appeared to receive the lumber, or pay the freight thereon; and on the 3d of February, 1851, it was sold at auction on board said vessel, by direction of the master, for the net sum of from $7,000 to $8,000, having been bid in at the request of the master of the bark, this being the highest bid.

"That said lumber remained in said bark about a month longer, when the master sold it at private sale for less than $8,000, and for about the same amount at which he had bid it in.

"That the said cargo was then discharged, and that such discharge occupied thirty-two days; that there was no want of diligence in discharging the cargo after such discharge was commenced.

"That no part of said freight has been paid or collected, except the amount above stated. I further find that a draft or bill of exchange was drawn and accepted, and delivered, as set forth in the case, being for the excess of freight money, computed at the rate expressed in the bills of lading over the amount computed at the rate expressed in the charter.

"From these facts the conclusions of law drawn by me, as stated in my decision, are, that the plaintiff is entitled to recover of the defendants for thirty days' detention of said bark after the expiration of the lay days, at the rate mentioned in said charter, and the interest thereon.

"And that the defendants are not entitled to recover of the plaintiff on said draft, or to set off the amount thereof.

"And my reasons for that conclusion are briefly as follows, to wit:

"That the defendants, being entitled to detain the ship at San Francisco for sixty-six days without payment of demurrage, they were entitled to the benefit during that period of the chance or hope that the owner of the goods would pay freight therefor, or, in default thereof, that the proceeds of

the goods on a sale would be sufficient to pay the full freight: and, therefore, although as between the master and the owner of the goods the former was not bound to wait after the expiration of the twenty days mentioned in the bill of lading, yet, as between the plaintiff and defendant, such a sale would have been at the peril of the former, if it did not produce full freight. That it was the duty of the defendants to have restored the ship to the plaintiff at the end of the period allowed for demurrage; and delay, caused by the failure of the consignees to receive their goods and pay freight, was the fault of the defendants as charterers. Although the plaintiff accepted bills of lading as payment for freight or charter money, it was expressed to be without prejudice to the charter party; so that all the obligations of the defendants, as charterers, remained in full force, except that, to the extent of the bills of lading, they had received credit for the charter money with like effect as if the charter money was paid in advance.

"But the defendants are not responsible for an unnecessary or unreasonable delay after the reserved period had expired. As between the ship owners and charterers, it was the duty of the master, as agent for the plaintiff, to act with just regard to the rights and liabilities of the defendants—and that required him to sell the cargo and discharge it as soon as reasonably could be done after the period allowed for demurrage expired. This he did, though he bought it in himself. In that purchase he in no wise acted as the agent for the charterers, as such; and the circumstance that the defendants had an interest in the recovery of full freight was not sufficient to warrant him in detaining the ship at their expense, at a certain loss of $75 per day—certainly not, in a case in which it is not shown that there was the slightest reason to believe that the sale was not in all respects judicious, at the price bidden for the goods on the third of February, when the master, instead of accepting the bid, became the purchaser himself. There is nothing in the relation of the defendants to him which clothed him with authority to make

Robbins v. Codman.

such a purchase on their account, and detain the ship at their expense, in the hope of doing better. Indeed, it is quite apparent, from the whole case, that keeping the goods in the hope of doing better, means obtaining a nearer approximation to the freight due to the plaintiff, although it might result, if the defendants were in the mean time losers of seventy-five dollars per day for the plaintiff's benefit. The master had no such authority to speculate for the plaintiff's benefit at the defendants' cost. The rules by which the case is decided are these :

"The master was bound to sell the cargo within a reasonable time after the "lay days" expired, and any delay beyond that was not the fault of the defendants, for which they can be charged under the charter party. After the sale, the master had a reasonable time to deliver the lumber to the purchaser, and any delay beyond such reasonable time was not the fault of the defendants. That whoever became the purchaser, such reasonable time should be allowed. The object being to discharge the cargo, and restore the use of the ship, unincumbered, to her owners, the master or the plaintiff was entitled to the same period to discharge the lumber as if it had been sold to a third person. That the master having in fact sold or put up the property at auction, upon due notice, and on the third of February, and having become the purchaser on that day, it was his duty, as purchaser, (whether acting in his own right or as agent for the plaintiff, or for plaintiff and defendants jointly,) to have immediately discharged the cargo although two of the lay days remained unexpired. His relations to the property had wholly changed; and even if the interest of the defendants in the freight, and the exigencies in which the master found himself, be deemed to give him authority to make such a purchase for the benefit or for the account of both parties, (which I think it did not,) he had no right to continue to use the ship as a storehouse, at the defendants' sole cost, while waiting for higher prices. The master ought then to have discharged the cargo immediately after the third of February, and to have completed it within

a reasonable time. Upon the evidence submitted I find, as matter of fact, that thirty-two days were sufficient for that purpose, and were not unreasonable. Though the witnesses differ on the subject, I think the balance of evidence is, that the time actually employed in discharging was not unreasonable. The allowance of these thirty-two days after the third of February, and deducting two days for lay days, not then expired, makes the necessary period of detention (until the seventh of March) thirty days, for which the sum stipulated should be allowed—

Amounting to the sum of . . . . . $2,250 00

And the sum being due on that day—to wit, 7th of March, 1851—I allow interest from that day, amounting to . 533 13

"And order judgment for the plaintiff for $2,783 13 with his costs of suit."

Judgment was thereupon entered accordingly, for the sum of $2,986 69, debt and costs.

The defendants filed the following exceptions to the decision, so far as it was held—

*First.* That the master was not bound to sell the cargo until the sixty-six lay days had expired, and after that time the defendants were chargeable with demurrage for the time necessarily taken to unload the vessel.

*Second.* That although the plaintiff accepted bills of lading as payment of freight or charter money, still the master might keep the lumber in the ship during the lay days, if no owner, agent or consignee appeared; and the defendants were chargeable with demurrage, after the lay days had expired, for the time necessary to unload the cargo.

*Third.* That after the sale, the master had a reasonable time to deliver the lumber to the purchaser, and the defendants were chargeable with demurrage during such time, deducting the number of lay days which remained.

*Fourth.* That whoever became the purchaser, this reasonable time should be allowed.

*Fifth.* That upon a sale of the lumber, the master or the plaintiff (becoming the purchaser thereof) was entitled to the same period to discharge the lumber as if it had been sold to a third person.

*Sixth.* That the plaintiff was entitled to recover two thousand seven hundred and eighty-three dollars and thirteen cents.

*Seventh.* That the plaintiff was entitled to recover.

The decision and exceptions were brought for review to the general term.

*Charles L.* and *Erastus C. Benedict,* for the defendants.

*George C. Goddard,* for the plaintiff, cited *Lacombe* v. *Waln,* 4 Binney, 299 ; *Randall* v. *Lynch,* 2 Camp. 352 ; *Dobson* v. *Droop,* 4 Car. and P. 112, 19 Com. Law ; *Harman* v. *Clarke,* *Same* v. *Mant,* 4 Camp. 159, 161 ; *Barrett* v. *Dutton,* 4 Camp. 333 ; Abbott on Shipping, 303.

By the Court. Woodruff, J.—I have carefully reconsidered the views expressed by me in giving the decision in this case at special term, and am confirmed in the opinion there given. So far, therefore, as relates to the construction of the charter party, the facts there found, and the rights and liabilities resulting therefrom, that decision may be taken as expressing my opinion on this appeal.

A question was, however, raised on the argument of the appeal, to which no particular attention was paid on the trial, and in relation to which nothing specific was said in the decision, viz., whether the period occupied in discharging the coal at San Francisco ought to have been allowed to the plaintiffs, even if the decision of the court, in regard to the delay in discharging the lumber, be deemed correct. I have no recollection that it was claimed on the trial that in this particular there was any difference between the coal and the

lumber, and the omission of any notice of such a question in the decision there given, leads to the conclusion that the point was not raised.

The ground now taken by the appellants on this subject is, that the coal was the property of the plaintiff himself, shipped for ballast, and that the defendants are not liable for demurrage during the period employed by the master in discharging the owner's property. That the defendants had the whole of the sixty-six lay days left unexpired when the vessel arrived, within which to discharge the lumber; and if such discharge had been completed within sixty-six days, no claim to demurrage would have arisen, however much time was thereafter consumed in discharging the coal.

There is much force in the suggestion of the respondent's counsel that, although the liability of the defendants for any sum whatever is denied, yet they ought not to be permitted, for the first time, to set up such a distinction here; for, had the point been taken in any manner by such an allegation in the pleadings, or by such a claim on the trial, the plaintiff might have been prepared to show that no such fact exists, as is now alleged.

But without disposing of the appellants' present claim upon this ground, or considering the legal conclusion from the fact assumed, I am constrained to say that, in my judgment, the pleadings and proofs, as now exhibited, do not warrant the discrimination now contended for.

The claim rests entirely upon the assumption that the coal was the property of the owner of the ship, (the plaintiff,) and sent out as ballast. And without considering the question whether, if the coal was in fact the owner's property, it would have, as matter of law, reduced the number of days of demurrage chargeable to the defendants, this assumption must first be sustained.

Now, although the proof on this subject is loose, and of a character which, had it been objected to, might have been deemed incompetent, yet it was received without objection. One witness had an impression that the coal was sold to

Captain Codman; (one of the defendants;) and another witness testifies to an actual sale to Codman after the coal was on board, and states the manner in which it was paid for, and when the first payment was made. It appeared, however, that he did not speak from any personal knowledge, or from having been present at the sale, but derived his information from his position as book keeper for the agents of the ship here, and the entries of the transaction in the books then made by him. The very looseness and questionable nature of this evidence, received without objection, warrants, in some degree, the apprehension, not only that the defendants did not, on the trial, rely upon any doubt of Codman's ownership, but that the case was tried with a conscious knowledge that this evidence was true, and that he was, in fact, owner. Add to this the evidence that there was a bill of lading issued by the master for this coal, which would not have been necessary if the coal was the owner's property; or if it was done as a voucher between master and owners, still the amount of the surplus freight due to the defendants, when the freight was collected, must have been greater, if they were not chargeable with freight on the very coal in question. I should hardly be willing to alter the finding in this respect upon the evidence. But, be this as it may, the pleadings seem to me conclusive, when considered in connection with the charter party.

The complaint sets out the charter party, the defendants' agreement to furnish a cargo, and avers that the defendants caused the said bark to be laden with a large cargo of lumber and coal.

The answer, in terms, admits that the defendants "loaded said bark with the cargo mentioned in the complaint." After such an admission, the defendants were not likely to insist o⁻ the trial, that the coal was not shipped by them on freight under the charter party. Nor was it necessary for the plair tiff to prove it, nor would the defendants have been permitte to deny it.

It appears to me, therefore, that the whole foundation f(

Robbins *v.* Codman.

the distinction between the coal and lumber fails, and that under these pleadings no such question can be raised.

It is true that one of the witnesses says the bricks and coal were in the lower hold, and were ballast to stiffen the vessel. It was none the less chargeable with freight if that was so; and if the coal belonged to the defendants, it was not the duty of the master of the ship to take out the lumber for the mere purpose of discharging the coal, nor until the lumber itself was discharged, when, as the tenor of the evidence is, the coal could not be discharged until the lumber was taken out of the ship.

My conclusion is, therefore, that there was no error in the decision at special term, in relation to the allowance for the time occupied in discharging the coal.

It is not denied that the bricks belonged to the plaintiff, but how much time was occupied in discharging the bricks does not appear. The testimony of the witnesses is addressed to the lumber and coal.

It does appear that in fixing the number of days occupied in the discharge of the cargo, an error was committed at special term, in not observing that the 4th of March and 5th of April, as well as the intervening time, were both occupied, and counting the period so as to include both days, the time occupied was thirty-three days, and deducting two unexpired lay days, would have charged the defendants with thirty-one days' demurrage, instead of thirty, as allowed on the trial. But the appellants do not insist upon this as a ground of reversal, and the respondent, who alone is prejudiced thereby, has not appealed.

My conclusion is, that the judgment at special term should be affirmed.

Judgment affirmed.